**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

MATTHEW LEBLANC, et al.

CIVIL ACTION

VERSUS

25-619-SDD-SDJ

LOUISIANA INSURANCE GUARANTY ASSOCIATION, et al.

# RULING

Before the Court is the *Motion for Partial Summary Judgment* filed by Plaintiffs Matthew and Kaylan LeBlanc ("Plaintiffs").[1] Defendant Louisiana Insurance Guaranty Association ("LIGA" or "the Association") has filed an *Opposition*[2] to which Plaintiffs replied.[3] The Court has considered the law, arguments, and submissions of the parties and is prepared to rule. For the following reasons, Plaintiffs' *Motion for Partial Summary Judgment* is DENIED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs' *Motion* seeks to resolve one issue of Louisiana state law. That is, to use Plaintiffs' words: "whether LIGA may avoid bad-faith … penalties arising out of LIGA's own post-insolvency failure to timely pay an amount it determined was owed."[4] The following facts are undisputed for purposes of the Court's consideration of Plaintiffs' *Motion*.[5]

---

[1] Rec. Doc. No. 36.
[2] Rec. Doc. No. 37.
[3] Rec. Doc. No. 38.
[4] Rec. Doc. No. 36-2, p.1 (citation modified).
[5] Local Rule 56(c) for the Middle District of Louisiana required LIGA to submit an opposing statement of material facts responsive to Plaintiffs' *Statement of Material Facts*. M.D. La. LR 56(c). The rule further provides: "[t]he opposing statement shall admit, deny, or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts." *Id*. Valid local rules have the force of law, and litigants are charged with knowledge of these rules the same as with knowledge of the Federal Rules and all federal law. Therefore, a party that fails to comply with the Local Rules does so at [their] own peril." *Uber v. Penn Entertainment, Inc.*, 2026 WL 1896126, at * 1 (M.D. La. July 1, 2026) (internal citations and quotation marks omitted). Because LIGA has not submitted a responsive statement as is required under Local Ruel 56(c), the Court will deem Plaintiffs' *Statement of Material Facts* admitted for purposes of this

Plaintiffs' property at 31532 River Pines Drive in Springfield, Louisiana, sustained damage when Hurricane Ida made landfall on August 29, 2021.[6] Soon thereafter, Plaintiffs filed a claim under their homeowner's insurance policy issued by Southern Fidelity Insurance Company ("SFIC").[7] An inspection process ensued.[8] During the pendency of Plaintiffs' claim, however, SFIC became insolvent and "went into a receivership[,]" after which LIGA assumed defense of the claim and liability therefor under Louisiana state law.[9] For that reason, when Plaintiffs filed a *Petition for Damages* in Louisiana state court in August 2023, alleging failures to properly evaluate their claim and tender payment under the SFIC policy, LIGA was the named defendant.[10] Plaintiffs thus sought to hold LIGA liable for damages arising from its "breach of contract" under the SFIC policy,[11] in addition to "statutory damages for being arbitrary and capricious in evaluating and/or compensating for all hurricane-related damages."[12]

On March 27, 2024, at LIGA's request, Keystone Experts and Engineers, LLC ("Keystone") produced a report intended "to determine the extent of damage caused by wind [to Plaintiffs' property] on August 29, 2021 and provide[] a recommended evaluation for the determined damage" (the "Report").[13] The Report purported to review several "provided documents[,]" including photo reports and estimates prepared during the initial

---

*Motion*. M.D. La. LR 56(f); *see Lemings v. Taylore*, 2021 WL 2585920, at *3 (M.D. La. June 23, 2021) (moving parties' proposed uncontested material facts deemed admitted under Local Rule 56(f) where opposing party failed to submit an opposing statement).

[6] Rec. Doc. No. 1-2, ¶¶ 9-16; Rec. Doc. No. 36-4; Rec. Doc. No. 36-3, p.1.

[7] Rec. Doc. No. 1-4, p. 36, ¶ 5 (LIGA *Answer* to Original *Petition* (Rec. Doc. No. 1-4, p.1 ¶ 5) admitting existence of claim).

[8] Rec. Doc. No. 1-2, ¶ 12; Rec. Doc. No. 36-4, pp. 3-4.

[9] Rec. Doc. No. 1-2, ¶ 6 (*Amended* Petition); Rec. Doc. No. 1-4, p. 36, ¶ 5.

[10] Rec. Doc. No. 1-4, p. 1.

[11] Rec. Doc. No. 1-2, ¶ 20.

[12] *Id.*

[13] Rec. Doc. No. 36-4, p. 3 (citation modified).

adjustment of Plaintiffs' claim.[14] On May 16, 2025, based on the "figure reached by Keystone after their reinspection o[n] March 27, 2024," LIGA made Plaintiffs an "unconditional tender" in the amount of $29,721.86.[15]

On July 15, 2025, co-defendants LIGA and Centauri National Insurance Company ("Centauri") removed Plaintiffs' lawsuit to this Court, asserting federal jurisdiction under 42 U.S.C. § 4072 and 28 U.S.C. §§ 1331, 1337, and 1367.[16] On July 20, 2026, Plaintiffs filed the instant *Motion for Partial Summary Judgment* requesting the Court issue a ruling "[d]eclaring that LIGA is not categorically immune from bad-faith penalties arising from its own post-insolvency claims-handling conduct" and that its May 16, 2025 unconditional tender "was belated and does not preclude Plaintiffs' bad-faith penalty claim."[17]

## II. LEGAL STANDARD

"A partial summary judgment order is not a final judgment but is merely a pre-trial adjudication that certain issues are established for trial of the case."[18] Partial summary judgment, like its more fulsome counterpart, summary judgment, "serves … to root out, narrow, and focus the issues" argued at trial.[19] Thus, it is governed by the same standard as a motion for summary judgment.[20]

A court should grant a motion for summary judgment when the pleadings "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law."[21] In applying this standard, the Court should construe "all facts and

---

[14] *Id.* at pp.3-4.
[15] Rec. Doc. No. 36-3, p. 1 (citation modified).
[16] Rec. Doc. No. 1, pp. 1-2.
[17] Rec. Doc. No. 36-2, p. 6.
[18] *Looney Ricks Kiss Architects, Inc. v. Bryan*, 2014 WL 1092403, at *2 (W.D. La. 2014) (internal citation omitted).
[19] *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1415 (5th Cir. 1993).
[20] *See* Fed. R. Civ. P. 56.
[21] *Id.*

inferences in favor of the nonmoving party."[22] The party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact as to issues critical to trial that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery.[23] Courts must deny the moving party's motion for summary judgment if the movant fails to meet this burden.[24] "If the movant satisfies its burden, however, the nonmoving party must designate specific facts showing that there is a genuine issue for trial."[25] In evaluating motions for summary judgment, courts must view all facts in the light most favorable to the nonmoving party.[26] There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a whole "could not lead a rational trier of fact to find for the non-moving party…."[27]

## III. DISCUSSION

At all times relevant to LIGA's handling of Plaintiffs' claim, Louisiana law authorized the recovery of bad faith penalties from insurers who arbitrarily and capriciously fail to properly evaluate or pay legitimate claims under two nearly identical provisions: Louisiana Revised Statute §§ 22:1892 and 22:1973.[28] Louisiana Revised Statute § 22:1892(A)(1)

---

[22] *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017).
[23] *U.S. E.E.O.C. v. Council for Advancement of Soc. Servs. and Educ.*, 814 F. Supp. 3d 675, 681 (W.D. La. 2026).
[24] *Id.* (internal citation omitted).
[25] *Id.*
[26] *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).
[27] *Id.*
[28] The Court notes that Louisiana's bad faith statutes were amended in 2024. As a result of the amendments, La. R.S. § 22:1973 was repealed, and § 22:1982 significantly amended, effective July 1, 2024. *See* Act No. 3 of the 2024 Regular Session, La. State Sen. Bill No. 232 ("Act No. 3"). The parties do not address what effect, if any, this has on the present litigation. However, in Louisiana, "[i]n the absence of contrary legislative expression, substantive laws apply prospectively only." La. Civ. Code. Art. 6; *see Bourgeois v. A.P. Green Indus., Inc.*, 783 So. 2d 1251, 1257 (La. 2001). Because there is no legislative expression in the Act to make it retroactively applicable, because § 22:1973 is a substantive law, and because other courts in this Circuit have already made an *Erie* guess that its repeal applies prospectively, the Court concludes that § 22:1973 and the prior version of § 22:1982 apply. Indeed, Plaintiffs initiated this

provides that "all insurers … shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured."[29] "Under its provisions, a failure to pay that is 'arbitrary, capricious, or without probable cause' renders an insurer liable for the resulting damage and for a statutory penalty, attorney's fees, and costs."[30] Similarly, § 22:1973 provides that an insurer may be held liable for "[f]ailing to pay the amount of any claim due any person insured by [a] contract within sixty days after receipt of satisfactory proof of loss from the claimant."[31]

Based on the foregoing, Plaintiffs argue that LIGA is subject to bad faith penalties because of its "delay of more than one year between the reinspection LIGA identifies as the basis for the amount" of its unconditional tender and the transmittal of same on May 16, 2025.[32] LIGA responds that, as a statutory guaranty association, its obligations are limited by statute to the payment of "covered claims"—a term the Legislature has defined

---

action in August 2023, almost one year before Act No. 3 took effect. Even so, at least one district court has suggested that the date of loss determines whether the Court can apply Louisiana's pre-amendment bad faith statutory scheme. *See Arnaud v. State Farm Fire and Cas. Co.*, 2026 WL 1080391, at *3 n.2 (W.D. La. Apr. 21, 2026) ("La. R.S. § 22:1973 has since been repealed but was in effect when [the loss] occurred.").

[29] La. R.S. § 22:1892(A)(1) (emphasis added). Here, that would be August 29, 2021—well before the effective date of Act No. 3. The same outcome would result if the Court considered the date the Plaintiffs' causes of action first accrued—that is, when the right to institute and maintain a lawsuit arose. Relevant here, "[a] plaintiff's cause of action ... arise[s] ... when the plaintiff provides satisfactory proof of loss and the defendant fails to pay." *Hartenstein v. State Fair Fire and Cas. Ins. Co.*, 2008 WL 2397713 at *4 (E.D. La. June 10, 2008) (internal citations omitted); *see Sher v. Lafayette Ins. Co.*, 988 So.2d 186, 206 (La. 2008)). Plaintiffs contend LIGA had received satisfactory proof of loss by March 27, 2024. Rec. Doc. No. 36-2, p. 5. Assuming without deciding that LIGA was subject to Louisiana's bad-faith scheme for insurers, it had thirty (30) and sixty (60) days under § 22:1892 and § 22:1973, respectively, to tender payment before liability for bad faith damages and penalties would arise. Thus, Plaintiffs' causes of action would have accrued on April 26 and May 26, 2024, accordingly. It is clear, then, that all the events and essential facts giving rise to the Plaintiffs' bad faith claims occurred well before the legislature's amendments went into effect on July 1. In any event, the pertinent language of the penalty provisions and the enumerated duties of insurers under § 22:1973—including that of good faith—transferred and were incorporated into the newly enacted La. R.S. 22:1892(I). Thus, even if the Court found that Louisiana's pre-amendment bad faith scheme did not apply, the outcome in the present case would be the same.

[30] *Williams v. North Light Specialty Ins. Co.*, 2026 WL 1552246, at *4 (M.D. La. June 2, 2026) (citing La. R.S. §22:1892).

[31] La. R.S. § 22:1973(B)(5) (emphasis added).

[32] Rec. Doc. No. 36-2, pp. 5-6.

to "expressly exclude penalties, punitive damages, attorney's fees, and litigation expenses."[33] With respect to Plaintiffs' argument that LIGA "has affirmative obligations to investigate claims, adjust them, settle them, and pay covered claims[,]"[34] LIGA argues that "consistent with [the aforementioned statutory limitations], Louisiana courts … have repeatedly held that LIGA cannot be held liable for statutory penalties … arising from [either] the conduct of the insolvent insurer or from LIGA's own post-insolvency claims handling."[35] Plaintiffs reply that, notwithstanding LIGA's relied upon statutory language, it seeks a "narrower ruling ... that LIGA is not categorically immune from bad-faith exposure for [its] own post-insolvency claims handling conduct."[36]

"LIGA is a sui generis, legislatively created 'private nonprofit unincorporated legal entity [,]' whose purpose, in part, 'is to provide for the payment of covered claims under certain insurance policies with a minimum delay and a minimum financial loss to claimants or policyholders due to the insolvency of an insurer.'"[37] Importantly, "LIGA is an association, not an insurer."[38] Thus, as a creature of the legislature, LIGA must operate, and is only liable to the extent provided, "within [its] legislative parameters"[39]— which are set forth in the Louisiana Insurance Guaranty Association Law ("LIGA law").[40]

---

[33] Rec. Doc. No. 37, p. 1.
[34] Rec. Doc. No. 36-2, p. 4.
[35] Rec. Doc. No. 37, p. 2.
[36] Rec. Doc. No. 38, p. 4.
[37] *Blake v. Americas Ins. Co.*, Inc., 2026 WL 2039707, at *8 (La. Ct. App. 3 Cir. July 15, 2026) (citing La. R.S. § 22:2056(A) and § 22:2052).
[38] *Lopez v. Louisiana Ins. Guar. Ass'n*, 2024 WL 3688343, at *3 (La. Ct. App. 5 Cir. Aug. 7, 2024) (citing *Bowens v. General Motors Corp.*, 608 So. 2d 999, 1005 (La. 1992)).
[39] *Blake*, 2026 WL 2039707, at *5 (internal citations and quotation marks omitted).
[40] La. R.S. § 22:2051, *et. seq.*

The Court therefore begins it analysis, as it must, with the plain language of the LIGA law.[41] "When the words of a statute are clear and unambiguous, they must be applied as written."[42] Under the LIGA law, it is clear that the Association is only responsible to pay "covered claims" as set forth in La. R.S. § 22:2055(6).[43] That section explains that a "[c]overed claim … shall <u>not</u> include … [a]ny amount awarded as penalties, punitive or exemplary damages."[44] The statute makes no distinction upon whether the damages arose from the pre-insolvency conduct of the insolvent insurer or the post-insolvency conduct of LIGA. Further, the LIGA law broadly immunizes LIGA in that "[t]here shall be no liability on the part of and no cause of action of any nature shall arise against … the [A]ssociation … for any action taken by them in the performance of their powers and duties" under the LIGA law.[45]

The Court understands this language to mean that, to the extent "LIGA is deemed to be the [insolvent] insurer … [for] its obligations on pre-insolvency covered claims and has all the rights, duties, and obligations of the insolvent insurer[,]"[46] it cannot be subject to a cause of action *of any nature* for its conduct pursuant thereto.[47] Louisiana courts have read the LIGA statute, similarly, deciding it "grants LIGA complete immunity in all matters relating to the performance of its duties."[48] Accordingly, one Louisiana appeals court, in *Caulfield v. Leonard*, held "LIGA is not liable [under §22:1973] for penalties and

[41] *State v. Diano*, 403 So. 3d 530, 534 (La. 2025) ("This court begins its analysis with the proposition that the starting point in the interpretation of any statute is the language of the statute itself.").
[42] *Williams v. Abadie*, 857 So. 2d 1118, 1121 (La. Ct. App. 4 Cir. 2003).
[43] *See* La. R.S. § 22:2058(A)(1)(a); *Bryan v. Louisiana Citizens Property Ins. Corp.*, 414 So. 3d 768, at *4 (La. Ct. App. 4 Cir. Mar. 11, 2025).
[44] La. R.S. § 22:2055(6)(b)(i) (emphasis added).
[45] La. R.S. § 22:2067.
[46] *Triay v. La. Ins. Guar. Assoc.*, 2025 WL 3077794, at *1 (La. Ct. App. 1 Cir. 2025) (citing La. R.S. § 22:2058(A)(1)(a) and (A)(2)).
[47] Emphasis added.
[48] *Caulfield v. Leonard*, 676 So. 2d 1117, 1119 (La. Ct. App. 5 Cir. 1996).

damages in failing to pay the claim of an insolvent insurer within 30 days."[49] This principle was reiterated more recently in *Lopez v. Louisiana Insurance Guaranty Association*, wherein the Louisiana appeals court—disposing of a plaintiffs' claim "that LIGA violated La. R.S. § 22:1973 by failing to unconditionally and timely tender amounts owed within sixty days"—ruled that the Association "has immunity under La. R.S. § 22:2067."[50] Instructively, both *Caulfield* and *Lopez* involved an attempt to subject LIGA to bad faith penalties for its post-insolvency claim handling conduct, which as Plaintiffs correctly note, "is distinct from any assertion that LIGA merely inherited a pre-existing penalty debt."[51] Yet, Plaintiffs fail to show how this distinction can defeat the LIGA statute's express grant of immunity shielding the Association from "cause[s] of action of any nature … aris[ing] against … the [A]ssociation … for any action taken by them in the performance of their powers and duties" thereunder.[52] Thus, the Court concludes it does not and the Association is immune from bad-faith penalties arising from delays that arise from its post-insolvency handling of claims.

The Court's ruling is further supported by the fact that both La. R.S. §§ 22:1892 and 1973, by their plain language, apply only to the acts of insurers.[53] As stated previously, "LIGA is an association, not an insurer; therefore, laws applicable only to insurers do not apply to LIGA."[54] Indeed, § 22:1973 goes a step further and specifically excludes the Association from liability for "any special damages awarded" pursuant to its

[49] *Id.* at 1120.
[50] *Lopez*, 2024 WL 3688343, at *2, *4.
[51] Rec. Doc. No. 38, p. 4.
[52] La. R.S. § 22:2067.
[53] *See* La. R.S. § 22:1892 (A)(1) (limiting its applicability to "[a]ll insurers issuing any type of contract"); La. R.S. § 22:1973 (B) (limiting its applicability to "the following acts, if … committed or performed by an insurer.").
[54] *Lopez*, 2024 WL 3688343, at *3.

provisions.[55] Instructively, the Louisiana Supreme Court, in *Bowens v. General Motors Corp.*, considered LIGA's position with respect to statutes imposing penalties and attorney's fees for the bad faith conduct of an "insurer."[56] Confronted with LIGA's argument here—that "it should not have to pay penalties …for its own actions, since it is not an 'insurer' for purposes of [those] statues" which limit their application to same—the Court agreed, stating, "LIGA is not an insurer, but is … an 'association.'"[57] Thus, the Court explained, "statutes imposing penalties must be strictly construed and every doubt must be resolved against the imposition of the penalty."[58] Accordingly, the Court held that it is "unable to say … that LIGA is an insurer for purposes of penalties and attorney's fees" and cannot be liable for same "*either as a covered claim or as a result of its own actions*."[59] Courts in Louisiana have applied (or withheld application of) the state's bad faith statues accordingly.[60]

Plaintiffs provide no legal argument in opposition to this line of cases other than to state "the authorities LIGA cites are remedy-focused" and that "[t]he present motion is narrower … [in that it] seeks a legal ruling arising from LIGA's own post-insolvency conduct."[61] Specifically, Plaintiffs' requested ruling is that "LIGA's status as a guaranty association does not, by itself, create the blanket immunity LIGA asserts and that late-payment assessments have been made against LIGA."[62] While it may be the case, as Plaintiffs urge, that LIGA's statutory obligation is, to some extent, "coextensive with that

---

[55] La. R.S. § 22:1973(F).
[56] 608 So. 2d 999, 1004-05 (La. 1992).
[57] *Id.* at 1005.
[58] *Id.*
[59] *Id.* (emphasis added).
[60] *See, e.g., Lopez*, 2024 WL 3688343, at *3; *Hollingsworth v. Steven Garr Logging*, 110 So. 3d 1219, 1228 (La. Ct. App. 2 Cir. 2013).
[61] Rec. Doc. No. 38, p. 3.
[62] *Id.* at p. 5.

of the insolvent insurer,"[63] Louisiana jurisprudence is clear that the Association does not thereby become an "insurer" for purposes of the state's bad faith statutory scheme applicable to same. Thus, Plaintiffs' assertion "that LIGA is a statutory substitute for the insolvent carrier"[64] for purposes of bad-faith penalties, when read in tandem with this jurisprudence and the statutory immunity LIGA enjoys under La. R.S. § 22:2067, is too broad—it is only a statutory substitute for the payment of "covered claims," which expressly excludes "penalties."[65] Accordingly, the Court concludes that, under Louisiana law, the Association cannot be liable for bad faith penalties and damages arising from its post-insolvency handling of claims.

Plaintiffs' cited authorities imposing late payment assessments on LIGA do not require a different result. Plaintiffs' reliance on the Fifth Circuit's decision in *Carillo v. Louisiana Insurance Guaranty Association*[66] to support the proposition that "LIGA is not automatically insulated from penalties generated by [its] own post-insolvency payment conduct" is especially unpersuasive.[67] While Louisiana's bad faith statutes provide "causes of action" to imposes "penalties" on insurers who act in bad faith,[68] the *Carillo* court made clear that the extra charge imposed on LIGA for its late payment of a compensation award under the Longshore and Harbor Workers' Compensation Act ("LHWCA") was neither a "penalty" nor a "cause of action."[69] In doing so, the *Carillo* court explicitly attempted to distance itself from the import of *Caulfield* which, as discussed above, found LIGA to be immune from the imposition of bad faith penalties applicable to

---

[63] *Id.* at p. 2.
[64] *Id.*
[65] *See Veillon v. La. Ins. Guar. Ass'n*, 608 So. 2d 670, 672 (La. Ct. App. 3 Cir. 1992).
[66] 559 F.3d 377 (5th Cir. 2009).
[67] Rec. Doc. No. 36-2, p. 5.
[68] *RKE Servs., LLC v. Penn-America Ins. Co.*, 2022 WL 4007469, at *2 (W.D. La. Aug. 5, 2022).
[69] *Carillo*, 559 F.3d at 382-83.

insurers.[70] Indeed, the *Carillo* court said nothing on the issue of bad faith conduct. Further, the court acknowledged that "the statute exempting LIGA from certain kinds of liability [§ 22:2067] was not presented and argued to the district court."[71] That is not the case here. Lastly, the *Carillo* court noted that the late payment charge—which was required by the LHWCA—could reasonably be understood as a "covered claim" to the extent "[t]he obligation of an insurer to comply with a federal provision for late payments would seem to arise out of and be within the coverage of [a] policy."[72] By contrast, Plaintiffs now seek to pursue a cause of action against LIGA which has, as its natural aim, the effect of imposing a penalty for conduct that falls squarely within the immunity granted under § 22:2067.

Plaintiffs' reliance on *Louisiana Insurance Guarantee Association v. Director, Office of Workers Compensation Program* ('*Director*"),[73] is no more availing. Plaintiffs present this case for the proposition that "the Fifth circuit described LIGA as 'deemed' the insolvent insurer to the extent of covered claims and as having the insurer's 'rights, duties[,] and obligations' and … rejected LIGA's attempt to narrowly construe its enabling statute against claimants."[74] Yet, as LIGA correctly notes, *Director* involved a determination of whether LIGA was properly considered the "last responsible employer" for purposes of an occupation disease claim under the LHWCA.[75] To this point, Plaintiffs concede the case neither "squarely interpreted Louisiana' bad-faith penalty statutes or the LIGA law's penalty exclusion in the posture presented here" and, thus, they "do not rely on those

[70] *Id.* at 382 (citing *Caulfield*, 676 So.2d 1117, 1119 (La. Ct. App. 5 Cir. 1996)).
[71] *Id.* at 383.
[72] *Id.*
[73] 614 F.3d 179 (5th Cir. 2010).
[74] Rec. Doc. No. 38, p. 5; Rec. Doc. No. 36-2, pp. 3-4.
[75] Rec. Doc. No. 37, p. 6.

cases to obtain an immediate award of Louisiana's bad-faith penalties."[76] The immediacy by which Plaintiffs seek a bad faith penalty award is irrelevant to an analysis of whether the Association is, as an initial matter, subject to the statutory provisions providing for that penalty. On that issue, *Director* is silent and the Court considers its reasoning no further.

The Court concludes that Plaintiffs are therefore precluded, as a matter of law, from pursuing against LIGA any cause of action for bad faith penalties applicable to insurers under La. R.S. §§ 22:1892 and 1973.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' *Motion for Partial Summary Judgment*[77] is DENIED.

IT IS SO ORDERED.

Baton Rouge, Louisiana, this 2nd day of November, 2026.

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

[76] Rec. Doc. No. 38, p. 5.
[77] Rec. Doc. No. 36.